729 P.2d 965

**STATE of Arizona, Appellee,**

v.

**Manuel M. BOJORQUEZ and Sheila S. Coleman, Appellants.**

**Nos. 1 CA–CR 9395, 1 CA–CR 9454 and 1 CA–CR 9523.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 25, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Div., and Galen H. Wilkes, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by John R. Rood, III, Deputy Public Defender, Phoenix, for appellants.

## OPINION

SHELLEY, Judge.

In Maricopa County No. CR–147706, appellant Sheila S. Coleman and Mary E. Honeycutt were charged with the crime of armed robbery. In Cause No. CR–147767, appellant Manuel Bojorquez was separately charged with armed robbery based on the same incident. The cases were consolidated. In Cause No. CR–148845, Bojorquez was charged with possession of heroin, which was allegedly found on his person as he was being booked on the basis of the armed robbery charge. The trial court denied a motion to consolidate Cause No. CR–148845 with the other two cases.

On July 23, 1985, the armed robbery matter proceeded to trial against all three defendants. The State moved to be allowed to introduce evidence obtained from the persons of Bojorquez and Coleman. The evidence consisted of a packet of matter alleged to be heroin found on Bojorquez and heroin paraphernalia found in Coleman's purse. The trial judge took the matter under advisement and trial continued. The State later again moved to be allowed to bring in the "heroin" evidence, and the trial court granted the motion.

At the close of the evidence, all defendants moved for a directed verdict of acquittal. The court granted Honeycutt's motion, but denied the other two defendants' motions. The jury returned guilty verdicts on the charge of armed robbery, a dangerous felony, as to both Coleman and Bojorquez. Bojorquez was sentenced to twenty years and Coleman to seven years. Bojorquez pled guilty to the possession of heroin charge (No. CR–148845), and was sentenced to four years, to run concurrently with his sentence in No. CR–147767.

Coleman's appeal from the judgment in No. CR–147706 became our 1 CA–CR 9523. Bojorquez' appeal in No. CR–147767 became our 1 CA–CR 9395. His appeal in No. CR–148845 became our 1 CA–CR 9454. All matters were consolidated by order of this court.

The facts, briefly, are as follows, viewed in the light most favorable to sustaining the verdicts. *State v. Olivas*, 119 Ariz. 22, 579 P.2d 60 (App.1978). On April 6, 1985, the victim, who does not speak English, was approached at a laundromat by two females, the defendants Coleman and Honeycutt. The victim had previously had sexual relations with Honeycutt. He did not understand what they were saying to him. Bojorquez intervened and explained that Honeycutt was proposing an act of prostitution. The victim agreed to the proposal and the four drove to Honeycutt's apartment.

As the victim and Honeycutt were preparing to consummate their arrangement, Bojorquez burst into the room and demanded the victim's money. The victim handed him $40.00. Bojorquez repeated his demand, and the victim denied he had more money. Bojorquez struck the victim on the thigh with a hammer. The victim then produced his wallet, which Coleman took from him. She took out the money and gave the wallet back to the victim, who was then allowed to leave. The victim was robbed of $192.00 in cash.

After leaving the apartment, the victim sought out the police, who returned with him to the apartment complex. After looking around, the officers were about to leave when they saw Honeycutt. She ran when she saw the officers. They apprehended Honeycutt and the other two defendants walking toward an automobile. Bojorquez told the victim "34 Tango, amigos," which Dixon understood to mean, "I have friends on the street." As Bojorquez and Coleman were booked, Bojorquez was found to possess a packet containing heroin, and Coleman was found to possess heroin paraphernalia.

Appellants' first argument is that the trial court erred by allowing the prosecution to present the items found when Bojorquez and Coleman were booked. Appellants argued below and argue here that the

introduction of such evidence violates Rule 404(b), Arizona Rules of Evidence. The State responds that the evidence was proper as an exception to Rule 404(b), *i.e.*, either to "complete the story" of the robbery, or to show motive. Alternatively, the State argues that if there was error, it was harmless.

■ Generally, under Rule 404(b), evidence that the defendant has committed other bad acts is not admissible to show either that the defendant acted in conformity with the other bad acts on this particular occasion or that the defendant is a bad person worthy of conviction. *E.g., State v. McCall,* 139 Ariz. 147, 677 P.2d 920 (1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984). Rule 404(b) explicitly provides an exception for evidence regarding other bad acts to prove motive. Arizona courts have also recognized an exception where the other bad acts "complete the story" of the offense. *E.g., State v. Wilson,* 134 Ariz. 551, 658 P.2d 204 (App. 1982).

Courts have exhibited great concern when the evidence of other bad acts involving narcotics is sought to be admitted in a case charging the theft of money or items other than narcotics, *e.g., People v. Bartlett,* 256 Cal.App.2d 787, 64 Cal.Rptr. 503 (1967). The issue has often been presented in the context of admissibility of evidence of alleged drug addiction or use to show a motive for theft of money or property other than drugs. *See* Annot., 2 A.L.R. 4th 1298 (1980).

■ The heroin evidence in this case did not complete the story of the robbery, rather it was evidence of a completely separate criminal action whose only purpose could be to prejudice the jury. *See State v. Wirtanen,* 117 Ariz. 129, 571 P.2d 275 (1977). No link was shown between the money stolen from the victim and the heroin found on Bojorquez. No evidence was introduced at trial as to whether Bojorquez or Coleman had any money on them at the time of arrest, which evidence could have indicated whether they had spent the $192.00 stolen from defendant to buy heroin. There is no

evidence that they did not have the heroin and paraphernalia in their possession when they robbed the victim.

The State's argument that the heroin showed motive is extremely weak. In *Powell v. State,* 478 S.W.2d 95, 98 (Tex.Crim. App.1972), the court mentioned "[t]o admit such testimony without showing some affirmative link between the theft and narcotics could show only that the accused is 'a criminal generally.'" *See also, Gould v. State,* 579 P.2d 535 (Alaska 1978); *People v. Cardenas,* 31 Cal.3d 897, 184 Cal.Rptr. 165, 647 P.2d 569 (1982).

Some courts have allowed the evidence of heroin use to come in, but only where it is supported by sufficient foundational evidence regarding the defendant's addiction, the cost of heroin, and the financial resources of the defendant. *See, e.g., People v. McConnell,* 124 Mich.App. 672, 335 N.W.2d 226 (1983). Here, of course, there is a complete absence of such evidence. It was error to admit evidence with regard to heroin and heroin paraphernalia.

■ The next question is whether the error was harmless. The United States Supreme Court has recently emphasized the importance of harmless error analysis in the appellate review of criminal appeals in which error is found. *Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). In *State v. Williams,* 133 Ariz. 220, 650 P.2d 1202 (1982), the Arizona Supreme Court stated:

> The test for determining harmless error is "whether or not there was reasonable probability ... that a verdict might have been different had the error not been committed." (Citations omitted.) To put it differently, is there any reasonable doubt that the jury would have found the defendant guilty in the absence of this inadmissible hearsay?

133 Ariz. at 225, 650 P.2d at 1207.

We have reviewed the transcript of the testimony in this case. We also note that the jury deliberated approximately three hours before finding appellants guilty. Based upon our review of the record, we

cannot say that the error was harmless beyond a reasonable doubt. Appellants' convictions for armed robbery in CR–147706 and CR–147767 must be reversed.

■ On August 23, 1985, appellant Bojorquez pled guilty to the charge of possession of heroin in Cause No. CR–148845. He was sentenced to prison on the robbery charge on September 5, 1985 and was given a concurrent term of four years on the heroin charge, with a sentencing date of September 20, 1985. His plea to possession of heroin was entered pursuant to a plea agreement wherein it was agreed that the State would dismiss allegations of three prior convictions and that the sentence on the charge of possession of heroin would run concurrently with the sentence on the robbery charge. Bojorquez contends that since he had been improperly convicted of armed robbery and faced a minimum term of 7 years with the Department of Corrections, he had little choice as to whether to enter a plea to the charge of possession of heroin. He asserts that if his robbery conviction was the result of an erroneous ruling, then agreeing to a concurrent sentence could not be deemed to be voluntary and intelligent under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). He posits that his plea of guilty to possession of heroin should be set aside and the matter remanded for trial. We disagree.

Bojorquez' objections to the admission of the heroin evidence were clearly articulated. Bojorquez was given written notice of his right to appeal and appeal procedure when he was sentenced for armed robbery on September 5, 1985. He filed an appeal on September 12, eight days before he was sentenced on the heroin charge. No attempt was then made to withdraw from the plea agreement. It is apparent that Bojorquez was waiting only for sentencing on the armed robbery charge so that he could appeal that conviction, and in fact the appeal was filed six days later. Bojorquez' counsel was certainly aware of the grounds for appeal when the plea was entered on August 23. Under the plea agreement, Bojorquez received a substantial benefit from the dismissal of the allegations of three prior convictions. Had he been convicted of possession of heroin along with the priors, the range of penalties would have been very substantially increased. Since imprisonment would have been mandatory under these circumstances, the fact that he was sentenced to prison on the heroin charge with the priors dismissed produced the same result on that point. The evidence against Bojorquez was very strong. Heroin was taken from his clothing after his arrest on the armed robbery charge. At the time he entered his plea of guilty to possession of heroin, he freely admitted that the heroin was his and that he possessed it. Further, his counsel stated on the record that the heroin was found on Bojorquez' person.

In the case of *State v. Nunez*, 109 Ariz. 408, 510 P.2d 380 (1973), the defendant was charged with murder in the first degree. Pursuant to a plea agreement, he pled guilty to murder in the second degree. The Arizona Supreme Court stated:

> The defendants contend that at the time the defendants entered their pleas, the death penalty was still effective in Arizona and that the pleas of guilty to second degree murder were entered only to remove the risk of a possible death penalty sentence. Defendants contend that since the death penalty has been abolished, there were, in fact, no plea bargains and the pleas should be set aside.
>
> \*   \*   \*   \*   \*   \*
>
> A plea bargain properly entered into and adhered to by the parties should not be set aside because of changes in the law occurring after the plea. To allow a defendant to come back into court and challenge a plea bargain after every change in the law not contemplated by defendant or his counsel at the time of the plea would result in no plea bargain ever being final. We find no error.

109 Ariz. at 411, 510 P.2d at 383.

Certainly if a plea of guilty is voluntary even though it was entered to avoid the death penalty without contemplation that

the death penalty law would later be declared unconstitutional, then a reversal of the armed robbery conviction in this case, which was apparently contemplated at the time of the plea, is insufficient to set aside the plea bargain. The plea agreement met all of the requirements of *Boykin v. Alabama.*

The conviction, judgment and sentence in CR–148845 are affirmed. The convictions, judgments and sentences in CR–147767 and 147706 are reversed and the cases are remanded for a new trial.

MEYERSON, P.J., and JACOBSON, J., concur.