546 P.2d 1158

**The STATE of Arizona, Appellee,**

**v.**

**Alton BULLOCK, Appellant.**

**No. 2 CA–CR 720.**

Court of Appeals of Arizona,
Division 2.

March 12, 1976.

Rehearing Denied April 14, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Law Offices of Ann Bowen, by Donald S. Klein, Tucson, for appellant.

## OPINION

KRUCKER, Judge.

Alton Bullock was convicted of unlawful possession of heroin and unlawful possession of marijuana. He was sentenced to serve two concurrent terms of not less than ten nor more than twelve years in the Arizona State Prison.[1] He contends his convictions must be reversed on four grounds. First, he contends that the giving of a flight instruction amounted to a comment upon his exercising a constitutional right to flee from police officers before they had formed a reasonable suspicion that criminal activity was afoot. Second, he contends the court erred when it asked members of a jury panel if:

" . . . there [is] anyone who disagrees with the proposition that the presumption of innocence gives way in the face of evidence to the contrary?"

Third, he maintains the court should have directed a verdict of acquittal because the evidence tending to establish possession was insufficient as a matter of law. Finally, he contends he was denied effective assistance of counsel. We disagree with all these contentions and affirm.

■ The facts on which the flight instruction was based are as follows. Tucson Police Officers Jones and Garigan were cruising an area of downtown Tucson where narcotics transactions were known to occur frequently. Officer Jones pulled the patrol car alongside the curb near the Manhattan Bar. He observed appellant standing approximately 15 feet away with two other persons. As he brought the patrol car to a stop, he noticed appellant turn away and put his hand toward his mouth as though he were thrusting some-thing inside it. Officer Garigan got out of the patrol car and walked toward the group. As he did so he noticed a bulge in appellant's right cheek. He asked appellant if he could talk to him. Appellant started walking away. Suddenly appellant began running as fast as he could across Tenth Street and south on Sixth Avenue. Officer Garigan ran after him and Officer Jones followed in the patrol car. Appellant ran east on Congress for a short distance. Then, when Officer Garigan fell, appellant doubled back and ran west on Congress until Officer Jones cut him off in the patrol car.

Just before he stopped appellant, Officer Jones saw him throw a lightcolored object the size of a fist into a concrete planter on Sixth Avenue near the entrance to the alley. Officer Jones detained appellant and then retrieved a plastic baggie from the tree well. The baggie contained some marijuana and 21 papers of heroin. Nothing else was found in the planter. Officer Jones estimated that 30 to 35 seconds elapsed between the time he saw appellant throw the object in the planter and the time he retrieved the plastic baggie. No one else was near the planter during this time.

Appellant analogizes between a person's "right to ignore his interrogator and walk away . . ..", *Terry v. Ohio,* 392 U.S. 1, 33, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889, 912 (1968) (Harlan, J., concurring) and a person's Fifth Amendment right not to testify in a criminal proceeding. He argues that since it is impermissible to comment on an accused's exercise of his Fifth Amendment right, it is equally impermissible to comment on the exercise of his right to walk away from inquisitive police officers. *Cf., Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). We think this argument employs a substantial and unjustifiable leap of logic. Mr. Justice Harlan spoke of a right he believed to exist in the absence of reason-

---

1. The sentences reflect prior convictions.

able suspicion on the part of police that crime might be afoot. The context of the statement suggests that Mr. Justice Harlan was concerned that *Terry* would be interpreted to give carte blanche authority to police officers to frisk anyone they thought might be armed. He suggested that an officer must first have a right to detain the person—hence he must have a reasonable suspicion that crime is afoot. Until that time, a person accosted by a police officer is as free to ignore him as he is free to ignore any other citizen.

We do not, however, think that the right to politely refuse to answer questions can be transformed into a rule of law that no inference may be drawn from the fact that a person flees upon sighting a police officer. Police officers themselves justifiably draw inferences from such conduct. We held in *State v. Baltier,* 17 Ariz.App. 441, 498 P.2d 515 (1972) that Baltier's "action in going to abnormal extremes to avoid uniformed police officers was not only suspicious conduct but also more consistent with criminal than innocent behavior," 17 Ariz.App. at 448, 498 P.2d at 522, and therefore that "Officers Bright and Crum were justified in stopping defendant for the purpose of conducting a limited field interrogation." *Id* at 448, 498 P.2d at 522. We hold here that appellant's conduct not only justified an inference by the police officers that criminal activity might be afoot, but also justified an inference by the jury that appellant had guilty knowledge.

■ Appellant also contends the facts did not support the giving of a flight instruction. He cites the following passage from *State v. Rodgers,* 103 Ariz. 393, 442 P.2d 840 (1968) in support of this contention:

"Flight, in criminal law, is defined as 'the evading of the course of justice by voluntarily withdrawing oneself in order to avoid arrest or detention, or the institution or continuance of criminal pro-

ceedings." 103 Ariz. at 395, 442 P.2d at 842.

Appellant reasons that if "flight" constitutes an attempt to avoid arrest or detention, then grounds must exist which justify arrest or detention before running away becomes "flight." We disagree. The purpose of the flight instruction is to permit the jury to infer that a defendant's activities under the circumstances show guilty knowledge. *State v. White,* 101 Ariz. 164, 416 P.2d 597 (1966). It is the defendant's mental state that is material and not that of the police. Whether or not grounds to detain appellant existed when Officer Garigan approached him, his conduct under circumstances showed that he feared detention and voluntarily withdrew to avoid it. We think the flight instruction was properly given.

■ Appellant's second contention is that the trial court committed fundamental error by asking the veniremen during voir dire whether any of them disagreed "with the proposition that the presumption of innocence gives way in the face of evidence to the contrary." None of the veniremen disagreed with this proposition which is, of course, erroneous for the reason that it fails to mention that the evidence to the contrary must be proved beyond a reasonable doubt. *State v. Childress,* 78 Ariz. 1, 274 P.2d 333 (1954). Appellant contends the trial court's question was tantamount to an instruction on the law and hence improper, citing the Comment to Rule 18.5, Rules of Criminal Procedure, 17 A.R.S. We think the Comments to Rule 18.5 are inapplicable. The purpose of Rule 18.5(d) is to place the responsibility for conducting voir dire examination on the court rather than on counsel. *State v. Riggins,* 111 Ariz. 281, 528 P.2d 625 (1974). Rule 18.5(c) requires the court to "ask any questions which it thinks necessary touching the prospective jurors' qualifications to serve in the case on trial." We think a question concerning the prospective jurors' ability to follow a rule of law con-

cerning the presumption of innocence and its disappearance is certainly appropriate in order to determine qualifications to serve.

As for the failure of the trial court to complete the *Childress* statement, we note that later on during voir dire the court made this statement and asked this question:

\* \* \* \* \* \*

"Now, Mr. Bullock does not have to prove his innocence. That is the duty of the prosecution, to prove his guilt beyond a reasonable doubt. Do any of you feel you can't agree with that rule of law?"

 The purpose of voir dire examination is first to determine whether any prejudice in favor of the defendant exists, and second, to determine whether any prejudice in favor of the State exists. We do not consider these questions to be instructions on the law which have the effect of prejudicing the jury throughout the trial. Rather, we consider them merely to be indicators of potential prejudice.

 Even if the question concerning the disappearing presumption amounted to an erroneous instruction on the law, it was cured by the formal instructions given at the close of the trial. The full *Childress* instruction was offered by the State and rejected by the court. This refusal, appellant contends, amounted to the court's passing up the only opportunity of cure that was offered. We do not agree. We think the offered instruction was properly refused as covered by other instructions, especially this one:

"The burden of proving the defendant guilty beyond a reasonable doubt rests upon the State. The burden never shifts throughout the trial."

 Appellant's third contention is that there was insufficient evidence of possession. We disagree. Appellant argues that the fact situations of *Carroll v. State,* 90 Ariz. 411, 368 P.2d 649 (1962) and *State*

*v. Carr,* 8 Ariz.App. 300, 445 P.2d 857 (1968) support his contention. *Carroll* held that the trial court should have directed a verdict of acquittal because a substantial amount of time elapsed between Carroll's being seen making "a backward motion with his hand" and the time the officers returned to the area to conduct the search. This was not the case here. Officer Jones saw appellant throw an object into the planter and retrieved it himself within one half to three quarters of a minute.

The facts of *Carr* are closer, but we think the decision in that case was strongly influenced by the then-current rule that a person could not be convicted on circumstantial evidence alone unless such evidence was not only consistent with guilt, but inconsistent with every reasonable hypothesis of innocence. That rule was abandoned by our Supreme Court in *State v. Harvill,* 106 Ariz. 386, 476 P.2d 841 (1970). Therefore, if this court were now presented with a conviction based on the facts of *Carr,* we would affirm.

On the facts of this case, we think the jury could properly infer that appellant knew the narcotics were located where the officers discovered them. The evidence therefore supports the conclusion that they were in appellant's actual possession immediately before he was apprehended. *Carroll v. State,* supra.

 Appellant finally contends he was denied effective assistance of counsel. He argues that trial counsel's acquiescence in the allegedly erroneous voir dire by the court, his failure to attempt to have the evidence suppressed at the appropriate time, and his failure to object to questions asked by the prosecutor which tended to impeach one of appellant's witnesses without proper foundation had the effect of reducing the trial to a "mockery of justice." We do not agree.

When considered as a whole, the voir dire by the court was not erroneous, as

we have already held. The only arguable basis for excluding the evidence was that there were not sufficient circumstances to justify stopping appellant or probable cause to justify his arrest. We think the chase was justified by reasonable suspicion that a person who takes to his heels at the mere approach of a police officer is engaged in unusual activity related to crime. *State v. Baltier,* supra. Once the chase is justified, the fact that appellant appeared to throw an object he had earlier put in his mouth into a concrete planter justified detaining him for the purpose of determining what he threw away. Once the contents of the bag were observed, of course, probable cause existed for his arrest. Since appellant has failed to demonstrate that the motion to suppress would have granted, we cannot agree that trial counsel's failure to make such a motion before trial constituted ineffective assistance of counsel. *State v. Phillips,* 16 Ariz. App. 174, 175, 492 P.2d 423 (1972).

 In cross-examining one of appellant's witnesses, the prosecutor asked, without objection from defense counsel, the following questions:

"Q. You were using heroin that night, weren't you?

A. No.

Q. That is not what you told Debbie Willis.

A. Who is Debbie Willis?

Q. You don't know Debbie Willis?

A. No, I don't."

We agree that no foundation was laid for an attempt to impeach by a prior inconsistent statement, *see* Udall, Arizona Law of Evidence § 63 at 87 (1960), but we do not consider trial counsel's failure to object to have prejudiced appellant's case. The short duration of the questioning on the subject and the change of subject indicates that the witness was taken at her word.

Finally, appellant contends that even if no single error of trial counsel is sufficient for a finding of ineffective assistance, their cumulative, effect is. We have reviewed the record and reject appellant's claim of inadequate representation.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concurring.